STATE OF MINNESOTA            DISTRICT COURT

COUNTY OF RAMSEY              SECOND JUDICIAL DISTRICT

---

|  |  |
|---|---|
| Hiwet Abraha, | Case Type: Employment<br>Court File No.: _____ |
| Plaintiff, | |
| v. | **SUMMONS** |
| Macalester College, | |
| Defendant. | |

---

THE STATE OF MINNESOTA TO THE ABOVE NAMED DEFENDANT:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at Ahlberg Law, PLLC, 333 Washington Avenue North, Suite 300, Minneapolis, Minnesota, 55401.

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A Default Judgment can then be

entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: January 3, 2019                                    AHLBERG LAW, PLLC

                                                                                  */s/ Ryan H. Ahlberg*
                                                                                  Ryan H. Ahlberg, Esq. (#386520)
                                                                                  Union Plaza Building, Suite 300
                                                                                  333 Washington Avenue North
                                                                                  Minneapolis, Minnesota 55401
                                                                                  (612) 900-2269
                                                                                  rahlberg@ahlberglaw.com
                                                                                  Attorney for Plaintiffs

## ACKNOWLEDGEMENT

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211 sanctions may be awarded by the Court for violation of said section.

Dated: January 3, 2019                                    */s/ Ryan H. Ahlberg*
                                                                                  Ryan H. Ahlberg, Esq. (#386520)

2

STATE OF MINNESOTA                        DISTRICT COURT

COUNTY OF RAMSEY                          SECOND JUDICIAL DISTRICT

Case Type: Employment
Court File No.:_____

Hiwet Abraha,

    Plaintiff,

v.                                        **COMPLAINT**

Macalester College,

    Defendant.

Plaintiff Hiwet Abraha, as and for her Complaint against Defendant Macalester College, states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Hiwet Abraha (hereinafter "Abraha") is an individual residing in Ramsey County, Minnesota.

2. Defendant Macalester College (hereinafter "Macalester") is a Minnesota nonprofit corporation and maintains a registered office located at 1600 Grand Avenue, St. Paul, Minnesota 55105.

3. Venue is proper pursuant to Minn. Stat. § 542.09.

4. Jurisdiction is proper in part, but not limited to, 29 U.S.C. § 2617(a)(2).

## FACTUAL ALLEGATIONS

5. Abraha worked as a custodian for Macalester beginning on or around December 6,

1

1999. In 2017 she earned approximately $48,000 and received pension benefits.

6. Macalester employees more than fifty employees within a seventy-five mile radius of its location in St. Paul, Minnesota, and Abraha worked for at least 1250 hours during any rolling twelve month period of employment with Macalester. Abraha was entitled to rights and benefits under the federal Family Medical Leave Act (hereinafter, "FMLA").

7. Abraha went to the doctor on December 14, 2011 because she had been suffering from pain in her right shoulder for about six months. She was diagnosed with rotator cuff tendonitis and prescribed a corticosteroid injection and physical therapy.

8. Abraha continued working with her pain, making occasional doctors visits including on January 11, 2012, March 6, 2012, and March 28, 2014. She was prescribed to continue physical therapy and given range of motion restrictions.

9. On April 10, 2014, Abraha had an MRI scan of her right shoulder and was diagnosed with a right shoulder rotator cuff tear with continued pain. She was referred for a surgical consultation and was told that surgery was the only way to cure her shoulder pain. From this visit through her termination from Macalester, Abraha was saving money to have the surgery and continued to work through her pain.

10. Her condition constitutes a "serious medical condition" as that term is defined by

the FMLA, and a disability under the Minnesota Human Rights Act (hereinafter "MHRA") Abraha was qualified to do her job with or without accommodation.

11. Through her termination in June, 2018, Abraha had taken time off on several occasions due to pain from her torn rotator cuff and continued to get treatment in the form of corticosteroid shots and physical therapy.

12. On or around February of 2012 Abraha's doctor recommended that she take two months off work to allow her shoulder to heal. Abraha informed Macalester management of this recommendation and took two months off in or around February through April of 2012. Abraha's doctor informed her that the next step to treat her torn rotator cuff would be to have surgery, and Abraha started depositing to a health savings account in order to pay the deductible for shoulder surgery. She was in the process of saving money to pay for shoulder surgery when she was terminated by Macalester.

13. Between June 22, 2017, and June 22, 2018, Abraha used vacation days or took sick leave on seventeen occasions for full or partial days because she could not work due to pain from her torn rotator cuff. The number of days that she took off in this twelve month period totaled less than the twelve weeks of leave she was entitled to take under the FMLA.

14. Abraha's supervisor at Macalester when she was terminated on June 26, 2018 was Kyle Wright (hereinafter "Wright") Wright knew that Abraha had a torn rotator

cuff, that she was experiencing pain and undergoing treatment in the form of corticosteroid shots, had taken time off due to pain from her condition, and that she was planning and preparing to have surgery for her condition. When Abraha took vacation and sick leave because of pain due to her torn rotator cuff, Wright did not meet Macalester's obligations under the FMLA to inform Abraha that her condition and need to take time off to deal with her torn rotator cuff qualified for FMLA leave or inform her of a valid reason that she was not eligible for FMLA leave.

15. Due to Wright's failure to inform Abraha of her right to take leave under the FMLA, Abraha continued to work with her condition and had to take days off because of pain due to her torn rotator cuff. Abraha did not understand that she was entitled to take leave to deal with her condition under the FMLA.

16. Between June 22, 2017, and June 22, 2018, Abraha used vacation days or took sick leave on seventeen occasions for full or partial days because she could not work due to pain from her torn rotator cuff. The number of days that she took off in this twelve month period totaled less than the twelve weeks of leave she was entitled to take under the FMLA.

17. On May 29, 2018, Abraha and her supervisors had a disciplinary meeting, also attended by her Union representative Drew Brodeen (hereinafter "Brodeen"), where she was told that she had too many unexcused tardies or absences and that

she would be terminated if she had another unexcused tardy or absence. Abraha did not understand this to include a tardy or absence due to her medical condition.

18. On June 22, 2018, Abraha called in sick because she was suffering severe pain due to her torn rotator cuff and was unable to perform her work responsibilities. She did not believe that this would qualify as an unexcused absence and she would not have risked her job had she known she would be terminated.

19. On June 26, 2018, Abraha was terminated for excessive unscheduled absences and tardies.

20. In March 2017, Abraha worked an overtime shift but was unable to sign in immediately upon beginning because another employee had removed the sign in paperwork to another location.

21. Wright was unaware of this and confronted Abraha, in front of students, for being late. Abraha explained the situation but Wright continued to repeat the same things and belittle Abraha in front of the students, threatening to dock her pay and humiliating her. Abraha was upset and told Wright that she was going to speak to the Union if he docked her pay.

22. Abraha told her Union representative, Dave Edens (hereinafter "Edens"), about the confrontation. Edens spoke to Wright about the incident, and Wright told Edens that Abraha had already filed a complaint against him with the Union, which was untrue. Edens asked Wright and Ralph (last name unknown, hereinafter "Ralph")

to meet with Abraha and resolve the issue.

23. Wright and Ralph met with Abraha to resolve the issue and it was decided that Abraha's pay would not be docked and Ralph asked Wright to apologize to Abraha, which he did and Abraha accepted. After this incident, Wright's behavior towards Abraha noticeably changed. He began acting like he didn't see her when passing her, calling her into his office for insignificant issues, and changing her job responsibilities to make work difficult her. Ralph also began to enforce more difficult job duties and excessively discipline Abraha.

24. Later that year, another employee who was assigned to work in the library retired. Part of Abraha's job duties had been to assist in the library in the mornings and after 1:00 pm, and she was given the option to take over the library duties, which she accepted. Bruce Brown (hereinafter "Brown") had also been assisting in the library. Two people were also customarily sent to the library to help with snow removal in the wintertime.

25. Work in the library continued as before for a few weeks, with Brown and Katherine Keller (hereinafter "Keller") assisting Abraha in the mornings and afternoons. Ralph and Wright then called a meeting and announced that Brown and Keller should no longer help Abraha setting up in the library in the mornings and afternoons. Keller asked why they would not be helping Abraha anymore because three people had always been assigned to those duties, to which Ralph and

Wright replied that "it's Hiwet's job" and that she and Brown should stay in Turck Hall from then on.

26. The job description for the library was changed after Abraha accepted it. Had she known that she would not be receiving any help there, she would have turned it down and stayed with her previous job at Malcolm Hall.

27. Abraha felt that she was being targeted for speaking up about Ralph and Wright's harassing behavior and that they were intentionally overworking her. She was given responsibilities that required assistance and that no one else had done individually since Abraha could remember working at Macalester. She called for assistance on the radio several times and was either ignored or told by Ralph and/or Wright that nobody should be helping her.

28. On one occasion on or around October 5, 2017, Abraha radioed to ask Barbara Olson (hereinafter "Olson") and Kyle Bell (hereinafter "Bell") to assist her with a large set up. Ralph and Wright yelled over the radio that nobody should be helping Abraha. Later that day Dave Edens (last name unknown, hereinafter "Edens") discreetly came to help Abraha because her workload was over capacity.

29. On another occasion on or around October 19, 2017, Abraha witnessed Ralph actively following her and trying to catch her making mistakes. He checked on her in the library several times, Abraha found him hiding in a closet once trying to catch her doing something wrong, and he followed her during her lunch break one

day to tell her that she was five minutes late returning from Turck Hall to the library. Ralph did not engage in similar behavior with any of his other employees.

30. Abraha became extremely mentally and physically stressed during this week because of Ralph's behavior and because of being given overly difficult work assignments. She attempted to go the the wellbeing facilities at Macalester but no one was available to see her. On or around January 23-26, 2018, Abraha called in sick and saw her doctor, who gave her a recommendation to recuperate from mental and physical stress outside of her normal job description.

31. In September 2017, Abraha was disciplined because of a dispute over overtime hours that she had worked but Ralph denied. She had signed out keys, which was proof that she had worked overtime, but had issues with a new time card machine recording all of her entries and exits. Other employees had similar issues with the new time card machine. Abraha had spoken to management several times about missing hours on her paycheck because of the time card machine issue. She was disciplined more harshly than other employees with similar issues and refused to sign her discipline sheet.

32. After this incident, Edens told Abraha that their supervisors purposely gave Abraha a hard time because they knew that in a past incident Abraha had been terminated but was given her job back when the Union disputed her termination.

33. As a direct and proximate result of Macalester's conduct, Abraha has suffered

mental anguish and suffering, consisting of but not limited to, a loss of income and worrying about securing future employment with a termination in her background.

34. As a direct and proximate result of Macalester's conduct, Abraha has suffered damages, including but not limited to, economic damages, other compensatory damages, damages for mental anguish and suffering, liquidated damages, other statutory and punitive damages under the FMLA and MHRA, cost of suit, and attorney's fees.

## CAUSE OF ACTION I
### Minnesota Human Rights Act - Reprisal (Minn. Stat. § 363A.15)

35. Paragraphs 1 through 34 are incorporated herein by reference.

36. Abraha, as described herein, is a member of a protected class based on disability under the MHRA.

37. Abraha's disability caused her to seek leave in order to receive corticosteroid treatment for her torn rotator cuff and to recover from pain due to stressing her injury during work. Her actions were statutorily-protected conduct.

38. Macalester took adverse employment action against Abraha by changing her job description to increase her workload and deny her assistance from other employees for responsibilities that were normally carried out by more than one employee.

39. Abraha's disability and treatment for such, and Macalester's adverse employment action are causally connected.

40. As a direct and/or proximate cause of Macalester's conduct, Abraha has been

damaged in excess of $50,000.00 to be proved with further specificity at trial.

### CAUSE OF ACTION II
### FMLA Entitlement (29 U.S.C. § 2615(a)(2))

41. Paragraphs 1 through 40 are incorporated herein by reference.

42. An FMLA entitlement claim "occur[s] where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012)*. This category of claims includes circumstances where "[a]n employer's action . . . deters an employee from participating in protected activities." *Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006)*.

43. Macalester's actions, as described herein, constituted FMLA violations. Macalester was required under the FMLA to inform Abraha that she was entitled under the FMLA to take leave to deal with her injury when she reported and presented documentation of her torn rotator cuff to her supervisors.

44. Moreover, once made aware of Abraha's medical condition, had Macalester complied with its obligations under the FMLA, Abraha's absences would have been excused and she would have not been terminated.

45. As a direct and/or proximate result of Macalester's conduct, Abraha has suffered damages in excess of $50,000 to be proved with further specificity at trial.

**WHEREFORE,** Abraha requests a **JURY TRIAL** on her claims and judgment against Macalester as follows:

1.  As to Cause of Action I, for judgment in favor of Abraha in an amount greater than $50,000.00 to be proved with further specificity at trial, and; for an order directing Macalester to cease and desist from unfair employment practices, to pay civil penalties, and any other appropriate legal or equitable relief pursuant to *Minn. Stat. § 363A.29 Subds. 3 through 6*. Abraha intends to move to amend her Complaint if necessary to assert a claim for punitive damages;

2.  As to Cause of Action II, for judgment in favor of Abraha in an amount greater than $50,000.00 to be proved with further specificity at trial, and for an order granting any other appropriate legal or equitable relief pursuant to the FMLA; and

3.  For Abraha's costs, disbursements and attorney's fees incurred herein; and

4.  For such other and further relief as the Court deems just and equitable.

Dated: January 3, 2019                                AHLBERG LAW, PLLC

*/s/ Ryan H. Ahlberg*
Ryan H. Ahlberg, Esq. (#386520)
Union Plaza Building, Suite 300
333 Washington Avenue North
Minneapolis, Minnesota  55401
(612) 900-2269
rahlberg@ahlberglaw.com
Attorney for Plaintiff

## ACKNOWLEDGEMENT

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211 sanctions may be awarded by the Court for violation of said section.

Dated: January 3, 2019                    /s/ Ryan H. Ahlberg
                                          Ryan H. Ahlberg, Esq. (#386520)